In the Matter of the Estate of OLGA STONE, Deceased. HOME OF THE DAUGHTERS OF ISRAEL, INC., Appellant; AMY NATHAN, as Administratrix of the Estate of OLGA STONE, Deceased, Respondent.

(Argued September 29, 1936; decided November 24, 1936.)

*Charles Howard Levitt, Sol Tekulsky, Lawrence J. Greenberg* and *Daniel J. Madigan* for appellant.

*David Sallovitz, Henry K. Neidich* and *Francis X. Kelly* for respondent.

O'BRIEN, J. By the order under review, the appellant has been directed to deliver to the estate of Olga Stone the sum of $1,477.54 which the courts below have adjudged to have been her property.

Olga Stone made application for admission to the home maintained by the Daughters of Israel and, after favorable action on her application, she executed an agreement. By its terms she promised to contribute $1,500 to the home as a contribution for the general maintenance of the home and not as compensation for her own admission or maintenance. In addition she agreed that, in the event of her death, all moneys in her possession or on deposit in bank should remain the property of appellant and that, in the event of her discharge from the home or in the event of her removal or her death any money contributed by her to the home should remain its property.

This agreement was executed October 12, 1930, and on October 23 Olga Stone was admitted to the home. She then paid $1,500 to appellant, in conformity with the terms of her agreement, and on January 21, 1931, paid $500 to cover expenses of burial and a monument. The validity of the receipt and retention of these payments is not contested.

In April, 1934, Olga Stone became ill and was transferred for treatment to Mt. Sinai Hospital, where she died. At the time of her death $1,477.54 remained to her credit in the Central Savings Bank and subsequently was transferred by the bank to appellant. This is the sum with which this litigation is concerned. The administratrix, a niece of Olga Stone, claims it as part of the estate. The agreement provides: " In consideration of the care and support received by the Guest from the Corporation, it is understood and agreed that in the event of death of said Guest, all moneys in her possession at that time, or on deposit in any bank or banks, or to her credit, shall remain the property of the Corporation." This contract consists of a printed form into which were inserted dates, names and amounts and was not prepared especially for this inmate. It is in no way ambiguous. The word " remain," instead of " become," may perhaps be regarded as slightly inartificial but nothing in the language has a tendency to deceive. The signature is proved to be that of Olga Stone and the record includes no evidence which could support a finding that either party made any misrepresentation or took advantage of the other. Nothing justifies a presumption of unfair dealing. "Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. (Wigmore on Evidence, § 2415.) If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him." (*Pimpinello* v. *Swift & Co.*, 253 N. Y. 159, 162, 163.)

The orders should be reversed and the petition dismissed, with costs in all courts.

CRANE, Ch. J., LEHMAN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Orders reversed, etc.